UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIC H. CUZZORT, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | No. 1:15-cv-01537-JMS-MJD |
| ) | |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security* ) | |
| *Administration*, ) | |
| ) | |
| *Defendant.* ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Eric H. Cuzzort applied for disability insurance benefits from the Social Security Administration ("SSA") on February 8, 2012, alleging an onset date of March 31, 2003. [Filing No. 13-5 at 2.] His application was denied initially on July 18, 2012, [Filing No. 13-4 at 2], and upon reconsideration on October 10, 2012, [Filing No. 13-4 at 11]. Administrative Law Judge ("ALJ") James R. Norris held a hearing on April 28, 2014, [Filing No. 13-2 at 32], and issued a decision on May 29, 2014 concluding that Mr. Johnson was not entitled to receive benefits, [Filing No. 13-2 at 13-26]. The Appeals Council denied review on September 4, 2015. [Filing No. 13-2 at 2.] Mr. Johnson then filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g). [Filing No. 2.]

**I.**
**STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires

1

an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Cuzzort was born in 1975 and has a high school education with previous work experience as a sales clerk. [Filing No. 13-2 at 24.][1] Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on December 19, 2013, determining that Mr. Cuzzort was not entitled to receive disability benefits. [Filing No. 13-2 at 33-34.] The ALJ found as follows:

---

[1] Mr. Cuzzort detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Cuzzort, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

3

- At Step One of the analysis, the ALJ found that Mr. Cuzzort had not engaged in substantial gainful activity[2] since the alleged onset date.  [Filing No. 13-2 at 15.]

- At Step Two of the analysis, the ALJ found that Mr. Cuzzort suffered from the following severe impairments: "degenerative disc disease, osteoarthritis, hypertension, dysthymic disorder, an adjustment disorder with depressed mood, and a mixed personality disorder."  [Filing No. 13-2 at 15.]

- At Step Three of the analysis, the ALJ found that Mr. Cuzzort did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Filing No. 13-2 at 16.]

- After Step Three but before Step Four, the ALJ found that Mr. Cuzzort has the residual functional capacity ("RFC") to "perform light work, as defined by the ability to lift and/or carry 20 pounds occasionally, and 10 pounds frequently; stand and/or walk about 6 hours in an 8 hour work day; and sit about 6 hours in an 8 hour workday.  With respect to postural limitations, the claimant can never kneel, crouch, crawl or climb ladders, ropes or scaffolds; but he can occasionally use foot controls.  Regarding manipulative activities, the claimant can occasionally reach overhead; but he can reach in all other directions on a frequent basis.  Additionally, any work must be unskilled and allow for only

---

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

4

superficial contact with the general public and peers." [Filing No. 13-2 at 17-18.]

- At Step Four of the analysis, the ALJ found that Mr. Cuzzort is unable to perform any past relevant work. [Filing No. 13-2 at 24.]

- At Step Five of the analysis, the ALJ found that considering Mr. Cuzzort's age, education, work experience, and RFC, there are jobs in the national economy that Mr. Cuzzort can perform, including "light" jobs as inspector, hand packager, bottling attendant, and bench/small parts assembler. [Filing No. 13-2 at 32.]

## III.
### DISCUSSION

On appeal, Mr. Cuzzort challenges the ALJ's decision on the following grounds: (1) the ALJ failed to follow the social security regulations and improperly weighed medical opinion evidence; and (2) the ALJ failed to properly consider all of Mr. Cuzzort's mental health restrictions in his RFC determination. [Filing No. 15 at 1.] The Court will address the issues in turn.

### A. Medical Opinion Evidence

Mr. Cuzzort raises several objections regarding the ALJ's review of the physicians' opinions, and the Court will restructure the issues as three separate arguments. First, Mr. Cuzzort argues that the ALJ applied rigorous scrutiny to the opinions of his treating sources, Dr. Downey and Dr. Flaugher. [Filing No. 15 at 11.] Second, Mr. Cuzzort claims that the ALJ also applied rigorous scrunity to the opinion of his examining physician, Dr. Celkis. [Filing No. 15 at 11.] Third, Mr. Cuzzort claims that the ALJ gave "virtually no scrutiny to the opinions of the testifying record reviewers. . . ." [Filing No. 15 at 11.]

5

*1. Treating Physicians*

Mr. Cuzzort takes issue with the ALJ's assessment of Dr. Downey's and Dr. Flaugher's opinions. He claims that the ALJ "heavily scrutinized Dr. Downey's opinion" and discounted it "because it was offered in connection with [Mr. Cuzzort's] application for disability benefits." [Filing No. 15 at 11.] Mr. Cuzzort claims that the ALJ cherry-picked evidence from Dr. Flaugher's medical records that demonstrated Mr. Cuzzort's impairments were not as limited, and failed to consider the record as a whole. [Filing No. 15 at 12.]

In response, the Commissioner claims that the ALJ gave numerous reasons for rejecting Dr. Downey's opinion. [Filing No. 21 at 16.] The Commissioner also claims that "there is no opinion from Dr. Flaugher in the certified record," that Mr. Cuzzort does not identify what evidence the ALJ mischaracterized, and that the "the ALJ noted [Mr. Cuzzort's] complaints to Dr. Flaugher and abnormalities" from the medical examinations. [Filing No. 21 at 13.]

In reply, Mr. Cuzzort claims that the "ALJ should not speculate about whether Dr. Downey's opinion may have been tainted because of his treating relationship with [Mr.] Cuzzort, while failing to apply the same scrutiny to the doctors being compensated by the government. . . ." [Filing No. 22 at 3-4.] Mr. Cuzzort also points out that the ALJ cherry-picked "from the treatment notes of treating rheumatologist Dr. Flaugher" and failed to consider specific evidence from the record, such as evidence of back pain, pain and swelling in his fingers, stiff hands throughout the day, and fullness and/or swelling to the small joints. [Filing No. 22 at 8.]

Under 20 C.F.R. § 404.1527(c)(1), an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]" because of his greater familiarity with the claimant's conditions and circumstances. *Minnick v. Colvin*, 775 F.3d 929, 937-38 (7th Cir. 2015). Section 404.1527(c)(2) provides that

6

"[i]f [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *Minnick*, 775 F.3d at 938. If the ALJ opts not to give a treating physician's opinion controlling weight, he must apply the factors under 20 C.F.R. § 404.1527(c)(2)-(6).

In determining not to give Dr. Downey's opinion controlling weight, the ALJ provided the following explanation:

> [L]ittle weight was given to [Dr. Downey's] assessment because it is not consistent with the objective evidence. Dr. Downey noted that [Mr. Cuzzort's] ability to lift was limited, but that he did not put forth a weight limitation; and opined that [Mr. Cuzzort] needed to hold onto a table or chair when transitioning between standing, sitting, and kneeling. He limited [him] to standing 5 minutes, and further limited [him] to pushing/pulling, postural, and environmental activities. . . . This assessment was put forth after meeting with [Mr. Cuzzort] on very few occasions and is not consistent with the overall [] medical evidence of record.

[Filing No. 13-2 at 23.]

Thus, contrary to Mr. Cuzzort's claim, the ALJ did not state that he gave little weight to Dr. Downeys' opinion because it was offered in connection with his application. In fact, the ALJ merely noted that Dr. Downey said he would complete the paperwork "after consulting [the] attorney[']s assistant." [Filing No. 13-2 at 20.] To the extent that this played a factor in what weight the ALJ gave to the opinion, the Court finds no error because, as will be noted, the ALJ otherwise gave proper considerations to the opinion. Although the ALJ did not explicitly state the factors under 20 C.F.R. § 404.1527, the ALJ gave a proper account of Mr. Cuzzort's infrequent treatment relationship with Dr. Downey, Dr. Downey's observations and clinical findings, and whether his opinion was consistent with the overall record. For example, the ALJ indicated that in 2012 Mr. Cuzzort reported that he had increasing lower back pain that radiated to his lower right

7

extremity, but that when he underwent imaging of the lumbar spine, the results showed "minor degenerative disc disease." [Filing No. 13-2 at 19.] The ALJ stated that the same year, Mr. Cuzzort went to the emergency room because of a fall, but the physician noted no acute distress and consistent imaging from his earlier consultation. The ALJ discussed Dr. Downey's medical records, which noted Mr. Cuzzort's subjective complaints. For instance, the ALJ noted that in April 2013, Mr. Cuzzort reported that he did not experience significant back pain and claimed he was doing well with medication. He also noted that in June 2013, Mr. Cuzzort claimed that he experienced back pain and spasms, but learned to adjust his body to minimize his pain. The ALJ also noted specific findings from Dr. Flaugher's medical records and Dr. Celkis' consultative examination, which are discussed further below. Their records also suggest some inconsistencies regarding Mr. Cuzzort's complaints. Thus, contrary to Mr. Cuzzort's claim, the ALJ did not apply rigorous scrutiny to Dr. Downey's opinion. Rather, the ALJ properly explained why he gave Dr. Downey's opinion little weight in light of the evidence from the record.

As noted by the Commissioner, the record does not contain any opinion from Mr. Cuzzort's treating rheumatologist, Dr. Flaugher, which discusses the nature and extent of Mr. Cuzzort's impairments. However, there are medical records regarding Mr. Cuzzort's consultations with Dr. Flaugher, and the ALJ thoroughly discussed these findings in the decision. In fact, the ALJ discussed many of the impairments that Mr. Cuzzort claims the ALJ failed to consider. For instance, the ALJ noted that Mr. Cuzzort "has alleged pain due to arthritis in his back and upper extremities, and has reported joint pain in his hands, bilaterally." [Filing No. 13-2 at 20.] The ALJ also noted that Mr. Cuzzort "alleged morning stiffness and fatigue" and that he had "some fullness in small joints of his hands." [Filing No. 13-2 at 20.] Accordingly, the ALJ did not apply

rigorous scrutiny to Dr. Downey's opinion and did not cherry-pick from Dr. Flaugher's medical records.

### 2. *Examining Physician*

Mr. Cuzzort raises several issues regarding the manner in which the ALJ assessed Dr. Celkis' opinion. [Filing No. 15 at 13-14.] He claims that the ALJ erred when he gave Dr. Celkis' opinion little weight for being inconsistent with objective evidence and he cites to specific evidence that he claims is consistent with the overall record. [Filing No. 15 at 13.] He also claims that the ALJ provides no support for his finding that Dr. Celkis' opinion is based on Mr. Cuzzort's subjective statements. [Filing No. 15 at 13-14.] Lastly, Mr. Cuzzort argues that the ALJ failed to address and compare Dr. Celkis' and Dr. Sands' opinions regarding Mr. Cuzzort's limitations using his hands. [Filing No. 15 at 14.]

In response, the Commissioner argues that the ALJ specifies those findings from Dr. Celkis' assessments that are inconsistent with the record. [Filing No. 21 at 17-18.] The Commissioner further claims that parts of Dr. Celkis' examination records indicate that Mr. Cuzzort is able to perform certain functions with his hands that, in turn, are not consistent with Dr. Celkis' opinion, which imposes greater limitations. [Filing No. 21 at 18.] The Commissioner cites to evidence that supports the ALJ's position that Dr. Celkis' opinion was based on many of Mr. Cuzzort's subjective complaints. [Filing No. 21 at 18.] The Commissioner argues that Dr. Celkis finds extreme limitations that the record does not support, whereas the state agency physicians, who reviewed the entire record, provided proper assessments. [Filing No. 21 at 20-21.] Lastly, the Commissioner points out that Dr. Sands' and Dr. Celkis' opinions regarding Mr. Cuzzort's hand limitations do not have many similarities. [Filing No. 21 at 21-22.]

In reply, Mr. Cuzzort argues that the ALJ applied rigorous scrutiny of Dr. Celkis' opinion and that the ALJ played doctor in providing his own lay interpretation of the medical examinations. [Filing No. 22 at 6-7.] He claims that the ALJ failed to consider Dr. Celkis' opinion regarding the severity of his back condition. [Filing No. 22 at 9.]

Generally, an ALJ will give more weight to an opinion of a source who has examined the claimant than to the opinion of a source who has not examined the claimant. 20 C.F.R. § 404.1527(c)(1). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *Moore v. Barnhart,* 278 F.3d 920, 924 (9th Cir. 2002).

In giving little weight to Dr. Celkis' Medical Source Statement, the ALJ stated it was "not consistent with the overall evidence of record, [including] the objective medical evidence" and it was "based on the subjective complaints from the claimant." [Filing No. 13-2 at 20.] The ALJ further stated that he instead gave "more weight to the assessment by Dr. Fischer who had the opportunity to review [Mr. Cuzzort's] entire record." [Filing No. 13-2 at 20.] While the ALJ did give Dr. Fischer's opinion greater weight than Dr. Celkis' opinion, the Court finds no error because the ALJ provided other adequate reasons for giving little weight to Dr. Celkis' opinion. For instance, in the paragraph where the ALJ assessed Dr. Celkis' medical examination records, he stated that while Dr. Celkis reported that Mr. Cuzzort "was able to walk 1 block, stand 5 minutes, climb 1 flight of stairs, and lift no more than 1 pound[] with each upper extremity," the results of his examination indicated that "his posture was normal, he ambulated without the need of assistive device, and there was no deformity, inflammation, swelling, stiffness, abnormal motion

enlargement or effusion observed." [Filing No. 13-2 at 20.] As the Commissioner contends, this is one example of evidence that indicates some inconsistency.

Moreover, the ALJ did not compare Dr. Celkis' assessment regarding Mr. Cuzzort's hand limitations with Dr. Sands' findings. However, the ALJ was not require to do a side-by-side comparison of both opinions provided that the ALJ gave adequate reasons for discounting Dr. Celkis' findings. The ALJ noted that Dr. Celkis' opinion states that Mr. Cuzzort can never reach, finger, push, or pull, but can occasionally overreach. [Filing No. 13-8 at 67.] Despite this finding, the ALJ stated that Dr. Celkis' medical examination showed that Mr. Cuzzort "demonstrated 5/5 muscle strength in the bilateral upper extremities and 5/5 bilateral grip strength, with ability to pick up a coin, button a shirt, use a zipper, tie his shoes, open a door, open a jar, pick up keys and write." [Filing No. 13-2 at 20.] Thus, Dr. Celkis' opinion regarding the use of his hands is more limiting than the objective findings from his medical examination. Accordingly, the Court finds no error in the ALJ's analysis of Dr. Celkis' opinion.

### 3. *State Agency Physicians*

Mr. Cuzzort argues that the ALJ explicitly rejected all the material from the treating and examining opinions in favor of the "testifying record reviewers," Dr. Fischer and Dr. Olive. [Filing 15 at 14.] He claims that this is the wrong standard to apply because it gives more "rigorous" scrutiny to the treating and examining opinions, while giving little to no scrutiny to the "testifying record reviewers." [Filing No. 15 at 15.] Mr. Cuzzort further claims that the ALJ adopted the opinions of Dr. Fisher and Dr. Olive "without scrutiny," despite the fact that during the hearing, they "merely testified that they reviewed the record, and then provided their conclusions." [Filing No. 15 at 16-17.]

11

The Commissioner, in response, argues that the ALJ complied with the factors set forth under 20 C.F.R. § 416.927 and Social Security Ruling ("SSR") 96-6p in evaluating the treating and examining physicians' opinions. [Filing No. 21 at 23-24.] The Commissioner disputes Mr. Cuzzort's argument that the ALJ applied rigorous scrutiny to the treating and examining physicians' opinions, and claims that "the ALJ's mention that the medical evidence supports Dr. Fischer's opinion refers to the ALJ's discussion of the evidence that cut against both Dr. Downey's and Dr. Celkis' opinions. . . ." [Filing No. 21 at 24-25.] The Commissioner argues that, contrary to Mr. Cuzzort's claim, the ALJ did not err during the hearing when he questioned Dr. Olive and Dr. Fischer about Mr. Cuzzort's medical records. [Filing No. 21 at 25.]

In reply, Mr. Cuzzort argues that Dr. Fischer's and Dr. Sands' opinions contradict each other, the opinions of the treating and examining physicians, Mr. Cuzzort's statements, and substantial evidence from the record. [Filing No. 22 at 5.] He argues that the ALJ's "conclusory, one-reason acceptance of the non-treating sources' opinions" does not explain how he weighed the "non-examining" physicians' opinions using the factors under 20 C.F.R. § 416.927. [Filing No. 22 at 9-10.] Mr. Cuzzort reiterates that the ALJ applied more rigorous scrutiny to the treating and examining opinions than the non-examining opinions, which he contends is contrary to the social security regulations. [Filing No. 22 at 10-11.]

An ALJ must consider all medical opinions in the record. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527(b). "[W]hen the evidence comes in the form of a medical opinion from a state agency physician, the agency's own regulations and rules require that the ALJ 'not ignore these opinions and must explain the weight given to the opinions in their decisions.'" *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011); SSR 96–6p; *see also* 20 C.F.R. § 404.1527(f).

12

The two state agency physicians who testified at Mr. Cuzzort's hearing are Dr. Fischer and Dr. Olive. Dr. Fischer testified regarding Mr. Cuzzort's physical impairments and Dr. Olive testified regarding Mr. Cuzzort's psychological impairments. In his decision, the ALJ noted that Dr. Fischer stated that after reviewing the entire record, Mr. Cuzzort had severe lumbar degenerative disc disease, osteoarthritis, and chronic pain syndrome, but that he was still able to perform "light" exertional work with "occasional" overhead reach, "frequent" reach in all other directions, occasional use of foot controls, and limitations in postural activities. [Filing No. 13-2 at 21.] The ALJ concluded that this opinion deserved great weight because it was "well-supported by the medical evidence." [Filing No. 13-2 at 21.] As discussed in the subsections above, the ALJ provides a thorough discussion of Mr. Cuzzort's medical records and opinion evidence, and noted that the objective evidence indicated that although Mr. Cuzzort suffered from severe impairments, they were not as restrictive as the limitations noted in Dr. Downey's and Dr. Celkis' opinions. Moreover, as recognized in SSR 96-6p, there are times when state agency physicians' opinions may be entitled to greater weight than the treating or examining physician's opinions, for instance when the state agency physicians base their review on the entire record and provide more detailed and comprehensive information in their findings. Thus, the Court finds no error in the ALJ's analysis of Dr. Fischer's opinion.

The ALJ stated that Dr. Olive discussed Mr. Cuzzort's "history of outpatient mental health treatment, as well as the consultative psychological evaluations" that he underwent, and found Mr. Cuzzort had the "ability to perform unskilled tasks, with superficial contact with the public and peers." [Filing No. 13-2 at 22.] Part of the evidence that the ALJ discussed in the decision included Mr. Cuzzort's mental status examination with Dr. Davidson in 2012 and consultative psychological examination with Dr. Nevins in 2013. Moreover, in determining what weight to

13

give Dr. Olive's opinion, the ALJ analyzed the opinions of two other state agency consultants, Dr. Shipley and Dr. Larsen, who found Mr. Cuzzort "had the ability to complete semi-skilled work in isolated settings away from the public and large groups of people." [Filing No. 13-2 at 23.] The ALJ gave Dr. Shipley's and Dr. Larsens' opinions "some weight," but noted that Dr. Olive's opinion was given "more weight" since it was "more consistent with the totality of the evidence." [Filing No. 13-2 at 23.] Thus, the ALJ gave a proper account of the evidence from the record and properly explained why Dr. Fischer's and Dr. Olive's opinions were afforded great weight. Accordingly, a remand on this issue is not warranted.

### B. Mental Limitations in the RFC

Mr. Cuzzort claims that the ALJ erred when he failed to consider evidence from the record that he claims demonstrates substantial difficulty interacting with coworkers and authority figures. [Filing No. 15 at 17-18.] He argues that this error is not harmless because the vocational expert testified during the hearing that an individual with similar restrictions would not be able to sustain any employment. [Filing No. 15 at 18.]

In response, the Commissioner argues that the ALJ's RFC determination indicates that Mr. Cuzzort can have superficial contact with the general public and peers, which he claims applies to coworkers. [Filing No. 21 at 26.] The Commissioner further contends that the "hypothetical restriction accommodating 'substantial difficulty' interacting with supervisors is unjustified in the record," and that Mr. Cuzzort does not cite to any evidence since his onset date that supports "supervisor limitations." [Filing No. 26-27.] The Commissioner contends that although two physicians "checked the box" in a worksheet that Mr. Cuzzort was "moderately limited" in accepting instructions and criticism from supervisors, "the ALJ gave sufficient reasons not to include it in the RFC." [Filing No. 21 at 27.]

In reply, Mr. Cuzzort argues that the ALJ, at least minimally, should have considered a supervisor restriction. [Filing No. 22 at 12.] He further claims the ALJ failed to consider a supervisor limitation at all and that such omission is not harmless error. [Filing No. 22 at 12.]

"When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Craft*, 539 F.3d at 676 (7th Cir. 2008); 20 C.F.R. § 404.1545(a)(2), (b), (c). Mental limitations must be part of the RFC assessment, because "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." *Craft*, 539 F.3d at 676 (7th Cir. 2008); 20 C.F.R. § 404.1545(c).

Here, the ALJ did consider Mr. Cuzzort's inability to interact with others, including co-workers, peers, and supervisors. First, the ALJ discussed the record regarding Mr. Cuzzort's history of anger control, irritability, and depression, as well as his testimony regarding his inability to tolerate people, but also noted that he was cooperative during his interviews with Dr. Davidson and Dr. Nevis. [Filing No. 13-2 at 21-21.] In assessing the medical opinions, the ALJ gave "some weight" to Dr. Shipley's and Dr. Larsen's opinions who found "Mr. Cuzzort had moderate limitations in the ability to accept instruction and respond appropriately to criticism from his supervisors," but then gave greater weight to Dr. Olive's opinion and concluded that he should be limited to "superficial contact with the general public and peers" based on his review of the record. [Filing No. 13-2 at 23.] Thus, the ALJ sufficiently considered whether Mr. Cuzzort should be limited in his interaction with his supervisors and chose not to include that limitation based on evidence from the record. Because the ALJ built an accurate and logical bridge between the

15

evidence and his conclusions, *Craft*, 539 F.3d at 673, the Court finds no error with the ALJ's RFC determination.

## IV.
## CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (*citing Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal basis presented by Mr. Cuzzort to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: July 15, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Gary M. Blumenthal
HORENSTEIN, NICHOLSON & BLUMENTHAL
lfrance@hnb-law.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov